# McCandless *v.* Phreaner, Appellant.

*Negligence—Point—Charge of wantonness—Trial.*

Where in a negligence case a point is presented charging wantonness, but there is no evidence whatever of wantonness in the case, the point should be promptly negatived.

*Negligence—Contributory negligence—Evidence—Chain across driveway.*

In an action to recover damages for injuries to a horse, it appeared that the defendant occupied a house upon an enclosed lot to and from which ingress and egress were had by.two openings. These openings were closed by means of chains, which were usually hung in the evening, but were down during the day. The chains were easily visible from the road, and the plaintiff had knowledge of their existence. On the evening of the accident, plaintiff, a milkman, drove through one of the openings, the chain being down, and in leaving started his horse at a trot, intending to pass out through the other opening. The chain, however, had been hung, and the horse was brought up suddenly and injured. There was no evidence that there was anything unusual about the chain either as to its make, or as to the manner in which it was hung. *Held,* that plaintiff was not entitled to recover, and that it was error to submit the case to the jury.

Argued Nov. 19, 1903. Appeal, No. 156, Oct. T., 1903, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1901, No. 126, on verdict for plaintiff in case of John C. McCandless v. William A. Phreaner. Before RICE, P. J., BEAVER, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass to recover damages for injuries to a horse and buggy. Before JOHNSON, P. J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $125. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*V. Gilpin Robinson* and *Frederick A. Sobernheimer,* for appellant, cited: Butterfield v. Forrester, 11 East. 60.

*John M. Broomall,* for appellee, cited: Pim v. Griffith, 3 Pa. C. C. Rep. 177.

OPINION BY BEAVER, J., March 14, 1904:

The defendant, a practising dentist, occupied a house upon an enclosed lot, to and from which ingress and egress were had by openings in the enclosure on the Manchester road at the rear of the premises, alleged to be the one provided for the delivery of provisions, etc., to the house, the other on Idlewild road, communicating with an ordinary driveway within the premises. These openings were closed against the public by means of chains attached to a closed staple or hook at one post and by hanging them upon open hooks attached to the other posts. These chains were shown to be of the ordinary character for that purpose, had been purchased for the purpose, had been regularly maintained and, as the defendant's testimony shows, were usually hung in the evening, so as to protect the premises at night. There is no evidence that there was anything unusual about them either as to their make or as to the manner in which they were hung. They were easily visible from the road or driveway and there is not the slightest evidence of wantonness or recklessness, much less of malice, either in the hanging or maintaining of them.

The plaintiff, who is the son of a milkman who supplied the defendant with milk, entered the premises of defendant upon a Sunday evening to deliver his milk. Ordinarily in doing this he, as he himself states, remained outside in the Manchester road but had, on one previous occasion, entered by the Manchester road and driven out by the Idlewild road, alleging that the defendant was standing in the bay-window of his residence and looking out and that he could have touched him with his whip. On this occasion the plaintiff alleges the gate chain was not hung, but a week afterward, when he had entered by the Manchester road, had deposited the milk can in the proper receptacle for it and had attempted to drive out by the Idlewild road, the chain was hung, his horse stumbled and fell and was injured, as was also his buggy, damages for which injury he seeks to recover in this suit.

One of the points which the defendant put below and upon which he relied here was: " 9. Under all the evidence, the verdict should be for the defendant." This was answered by the court below: " *Answer :* We cannot say that ; that is a question for the jury : refused." This answer was, of course,

predicated upon the fact that there was, in the opinion of the trial judge, evidence in the case from which the jury could find or reasonably infer negligence on the part of the defendant and the absence of contributory negligence on the part of the plaintiff.

1. What was the evidence of negligence on the part of defendant? It is admitted that his lot was enclosed; that he had the right to maintain such an enclosure as a protection against strays or persons or animals passing along the road, or simply to suit his own convenience and pleasure. It is not shown anywhere that the chain used by him for the purpose of closing the opening which during the day remained open was unusual in itself considered or in the manner in which it was hung, or that it was in itself dangerous. It is somewhat difficult to determine upon what the allegation of negligence is based but, upon the argument, upon special interrogation as to that subject, counsel for the appellee stated that it was because the chain hung too low; that, if it had been higher, the horse at least would not have stumbled over it.

There was no allegation in the argument before us of wantonness or intention to do injury. In the court below the plaintiff put this point : " 6. If the jury believe that the defendant, Dr. Phreaner, wantonly or intentionally left the chain down across one of the entrances to the driveways at his entrance and placed or had placed, at his direction, a chain across the other entrance, with the object of entangling the plaintiff or anyone else who might come upon the premises, then your verdict should be for the plaintiff," which was answered as follows : " *Answer :* I think I would affirm that point unconditionally ; that if he did wantonly and intentionally leave this chain down for the purpose of entangling this plaintiff and injuring him, I think I would affirm it. I may say, however, that the court does not remember any evidence of any kind bearing upon that question. If you do, you may take it into consideration. The court remembers none." This point should have been promptly negatived, without being read. There was no evidence of any kind of wantonness or intention to injure. Both point and answer serve no legitimate purpose in the case. They could only excite prejudice and, if there were nothing else in the case, a reversal could be well sustained upon the answer to this point alone.

There is more radical error, however, and we think the defendant's ninth point—"That, under all the evidence, the verdict should be for the defendant," should have been affirmed. We fail to find in the testimony any evidence of any negligence whatever on the part of the defendant. In the absence of evidence that the chain was not the ordinary and usual obstruction, either as to form or size or as to the manner of being hung, the defendant exercised an undoubted right in using it for the purpose for which it was intended. The fact that it was down during the day and hung at night does not in any way militate against his right to so maintain it. If, by watchfulness during the day, he was willing to assume the risk of strays or other animals passing along the road, he had the right to do so. If he hung the chain at night, those entering his premises were bound to take notice of it. It does not appear that, if the chain had been higher, the accident would not have happened or the injury been less than it was; indeed it may have been greater, for it appears that the horse had his fore legs over the chain and had reached it with his hind legs before the buggy to which he was attached was stopped. If there had been a sudden stoppage, in case the chain was higher, the horse might have been more seriously injured and the driver precipitated with more force from the buggy.

Although the precise question is not involved in Kelly v. Bennett, 132 Pa. 218, Mr. Chief Justice PAXSON's remarks in that case are pertinent here : "The defendant was not shown to have been negligent in any respect. The rail was a lawful structure. The defendant had a right to protect the area in that manner. Had he not done so and some one had fallen therein and been injured, there would have been more reason in charging him with negligence. It is said, however, that it should have been constructed without points. This is not so clear. The points are useful in preventing mischievous boys from climbing over it."

Although the case of Gillis v. Penna. R. R. Co., 59 Pa. 129, is not, in the general aspect of the case, directly in point, Mr. Justice SHARSWOOD, who delivers the opinion, says : " So must a person using by permission or sufferance the private property of another take upon himself the risks incident to it."

We fail to see what duty the defendant owed to the plaintiff

in reference to the manner in which. the. opening in his fence was to be maintained.   The plaintiff was not there by invitation, either express or implied.   It is true he says that the opening on the  Manchester road, by which he entered, was free, although this is denied by the defendant; but, assuming it to be true, he had an absolutely safe and open way according to his own account, by which he could have had egress from the grounds after depositing his milk can.   Instead of taking that way, he chose to depart by another way, of which he had no knowledge, except what was based upon a previous use of it once, under similar circumstances, and, having assumed the risk, he was bound by the consequences.   In no view of this case which we can take can we see any liability on the part of the defendant.

2.  Did the plaintiff in any way contribute to his own injury? Assuming that his version of the accident is correct and that the opening on the Manchester road was free when he entered, he was, of course, bound to exercise due care in seeking egress by the other road.   Instead of doing so, he started his horse at a trot before reaching the opening.   He was familiar with it and ought to have known, what was plainly apparent to anyone entering by that entrance, that a chain was there which might be hung at any time barring either ingress or egress. Instead, therefore, of driving carefully by a driveway which was intended for visitors rather than those who ministered to the needs of the family, with an open way by which he had entered accessible, he chose to drive his horse at a trot and was brought up suddenly by the chain hanging in its usual place under the ordinary circumstances attending the closing of the entrance.   According to his own account, he did not look for it.   He was trying to determine, by careful scrutiny, where the posts were, so as to avoid them.   But, even admitting that there was no fault attributable to him, because of his lack of knowledge of the existence of the chain, as he alleges, was he not bound by the very nature of the circumstances, to anticipate that enclosed grounds, such as were occupied by the defendant, would have some bar to unrestrained ingress and egress? However this may be, we are clearly of the opinion that the case, as we determine it, may safely rest on the absence of any evidence of negligence on the part of the defendant.   We

think, therefore, the defendant's point "That, under all the evidence, the verdict should be for the defendant," should have been affirmed.

Judgment reversed.