## Nichol et al., Appellants, v. Bell Telephone Co.

*Negligence—Infants—Attractive appliance—Stringing wire on fence—Notice as to children—Probability that injury would result —Insurer of safety—Burden of proof.*

1. One is liable only for natural and probable consequences, such as might and should be foreseen, in the light of common experience, as likely to result from the act complained of.

2. Owners and occupiers of real estate and those having the lawful right to use the same, are bound to exercise ordinary care with respect to the rights of children, as well as others on the property. The law demands due, reasonable and ordinary care; but, where an appliance, machine, structure or object, is not obviously or inherently dangerous, and has been in daily use, and has proved uniformly adequate, safe and convenient, it may be further continued without the imputation of negligence, although it might have been made safer at slight expense.

3. Where the owner of land brings or permits thereon something of an artificial nature, which is both attractive and dangerous to children, he is bound to use reasonable care for their protection, but he is never held negligent for failure to anticipate injury to children or adults from appliances not dangerous nor likely to become so.

4. Although an infant plaintiff's tender age precludes contributory negligence in an accident case, yet the infant cannot establish its case, except by proof of negligence on part of defendant.

5. In an action against a telephone company to recover damages for injuries to a child five years old, sustained from a fall, caused

by his tripping on a telephone wire strung by defendant along an iron fence separating the premises of the child's father from an adjoining property, a nonsuit is properly entered, where it appears that the fence in question was one known as a "hairpin fence" about three feet high; that defendant, under a contract with the adjoining owner, had established a telephone in his house, which was connected up by a wire extending along such owner's side of the top rail of the fence, and attached thereto; that the wife of such owner informed defendant's foreman, when the wire was being placed, that children in the neighborhood went from one house to the other, and asked that the wire be put where children would not be playing; that thereafter she called the attention of a workman wearing defendant's uniform that the wire sagged, but nothing was done; that there was a clothespole in the fence from which a clothesline extended to the porch of such owner, and that plaintiff, assisted by the pole and the clothesline, would climb over the fence and play with the owner's children; that, at the time of the accident, plaintiff, in attempting to get over the fence, caught his foot in the wire and was thrown, so that his face struck upon a cement walk on the neighbor's side; that, at the point where his foot caught, the wire was against the fence, and had sagged to within about eighteen inches of the ground, but did not form a loop in the sense of a noose, so as to imprison the boy's foot; and that the boy's parents were away from home when the wire was installed, but saw it on their return, and that neither they nor their neighbors required its removal before the accident, although they both permitted their children to climb the fence and play around it.

6. In such a case the fact that defendant's foreman was notified that children played in the yard, and was requested to put the wire where they would not be playing, is important as notice of the habits of the children, but does not fasten liability upon defendant, in the absence of evidence tending to show that the wire was so placed as to create a probability that injury would result therefrom. It did not impose on defendant the liability of an insurer of the safety of the children, especially those of a third party.

Mr. Justice SIMPSON filed a dissenting opinion.

Argued January 13, 1920. Appeals, Nos. 130, 131, by plaintiffs, from order of C. P. No. 1, Phila. Co., Sept. T., 1916, No. 2260, refusing to take off nonsuit in case of William H. Nichol, by his father and next friend, William G. Nichol, and William G. Nichol, in his own right,

v. Bell Telephone Company of Pennsylvania.  Before
BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMP-
SON and KEPHART, JJ.  Affirmed.

Trespass to recover damages for personal injuries to
a child five years old.  Before SHOEMAKER, J.

The facts appear by the opinion of the Supreme Court.

At the trial the court entered a compulsory nonsuit
which it subsequently refused to take off.  Plaintiffs ap-
pealed.

*Error assigned* was order refusing to take off nonsuit.

*Eugene Raymond,* with him *John Martin Doyle,* for
appellants.—Whether negligence existed was a question
for the jury, which, under the evidence should not have
been withheld from them by the court: Mullen v. Wilkes-
Barre Gas & Electric Co., 229 Pa. 54; Daltry v. Media
Electric L., H. & P. Co., 208 Pa. 403; Kreiner v. Straub-
muller, 30 Pa. Superior Ct. 609; Millum Lehigh, etc.,
v. Coal Co., 225 Pa. 214.

*Benjamin O. Frick,* with him *Prichard, Saul, Bayard
& Evans,* for appellee.—Though a child under the age of
seven may not be guilty of contributory negligence, he
has no right to recover, unless he proves negligence of
defendant: B. & O. R. R. v. Schwindling, 101 Pa. 258;
Guilmartin v. Phila., 201 Pa. 518.

OPINION BY MR. JUSTICE WALLING, March 1, 1920:

These actions are for injuries to a child, caused by
tripping upon a telephone wire, in which the father
brings suit as next friend and in his own right.  Plain-
tiffs reside at 6106 Walnut street, Philadelphia, and a
family named Gambino resides on the adjoining lot;
their back yards being separated by an iron fence which
consists of posts with rails near the top and bottom
through which upright bent rods extend, with the loops

at the top, making what is known as a "hairpin fence" about three feet high. In the summer of 1915 the defendant, at Mr. Gambino's request, installed a telephone in his residence, which was connected up by a wire extending along on his side of the top rail of this fence and attached thereto by porcelain knobs. 'When the wire was put up Mrs. Gambino told defendant's foreman that there were children in the neighborhood and living there, who went from one home to the other, and asked that the wire be put where children would not be playing. Thereafter the wire sagged between the knobs, to which she called the attention of a workman wearing defendant's uniform, but nothing was done. There was a clothespole in the fence from which a line extended to Gambino's porch, and the boy, William H. Nichol, herein called the plaintiff, then under five years of age, would climb the fence, assisted by the pole and clothesline, and play with the children in the Gambino yard. As he was attempting to do so on January 28, 1916, his foot caught in this wire and he was thrown so that his face struck upon Gambino's cement walk, causing the injuries complained of. Where his foot caught, the wire was against the fence and had sagged to within about eighteen inches of the ground, but did not form a loop in the sense of a noose so as to imprison the boy's foot. Plaintiffs were at the seashore when the wire was placed there, but saw it on their return, and neither they nor the Gambinos requested its removal, until after the accident, although both permitted their children to climb the fence and play around it. These appeals by plaintiffs are from judgments refusing to take off the compulsory nonsuits, which had been entered on the ground that the evidence disclosed no negligence on part of defendant.

In our opinion the record justifies that conclusion. Plaintiff's tender age precludes contributory negligence and we do not question his right to climb the fence and go upon the Gambino lot. On the other hand defendant placed the wire upon the property of its patron and was

not a trespasser upon either lot; there was no contract relation or other situation by which a presumption of negligence could arise from the happening of the accident (Gramlich v. Wurst, 86 Pa. 74), and there is of course no responsibility for a mere accident as such (Bradley v. L. S. & M. S. Ry. Co., 238 Pa. 315; Joyce v. Black, 226 Pa. 408; Stearns v. Ontario Spinning Co., 184 Pa. 519; Earle v. Arbogast & Bastian, 180 Pa. 409), nor anything to take this case out of the general rule that the burden is on plaintiff to prove defendant's negligence; and that burden is not here met. No witness, expert or lay, attempts to say that the wire was improperly located or rendered the place dangerous or states any facts from which such a conclusion can fairly be drawn. Even a child cannot establish its case except by proof of negligence: Kay v. Pennsylvania R. R. Co., 65 Pa. 269; Balt., etc., R. R. Co. v. Schwindling, 101 Pa. 258. And where there is no proof of negligence the court must direct a verdict for defendant (Huey v. Gahlenbeck, 121 Pa. 238; Phila. & Read. R. R. Co. v. Schertle, 97 Pa. 450; McCandless v. Phreaner, 24 Pa. Superior Ct. 383), or grant a nonsuit: Spickernagle v. Woolworth, 236 Pa. 496; Fink v. Wilkes-Barre, etc., Traction Co., 224 Pa. 618. True, the child tripped on the wire, but children trip on many objects perfectly harmless and properly located, so that fact does not prove negligence; and who can say it may be inferred merely because of leaving a dead wire upon an iron fence, taut or slack, even where children play? The wire extended neither to the top nor out to one side, so it is not easy to see how it added to the danger, especially as it was against the fence and protected by it. Had the wire been strung across a path or in the open, the case would be different. In jumping or climbing the fence it is less difficult to understand how a boy's foot might be tripped by the rail or loops at the top, than by the wire hanging against the side. There would be only a possibility of the latter, and it happened here because the boy's hand missed or

slipped from the clothesline; this appears from the direct evidence and is corroborated by the circumstances that he fell facing the Gambino lot. Had the wire been so placed by Gambino, his responsibility would be equal to that of defendant, and, if liable for the wire, why not for the fence had the boy tripped upon it? However, the law does not place such a high degree of responsibility for ordinary occurrences, and "no liability arises, as a rule, in respect of injuries sustained from walls, fences, gates, and the like. And the same is true of simple tools and appliances, such, for example, as a ladder": 20 R. C. L., sec. 79, p. 89. And, "in the absence of a statutory enactment, no obligation rests upon anyone to guard against injuries that cannot be foreseen in the light of common experience": Ibid., sec. 26, p. 33. It is familiar law that one is liable only for natural and probable consequences, such as might and should be foreseen as likely to result from the act complained of.

In the case of Hall v. New York Telephone Co., 214 N. Y. 49, defendant's employees left a bottle of denatured alcohol by the roadside, which was found by small boys, one of whom was injured by it being set on fire, and the court there stated that, "In order to hold the defendant responsible for the result of this accident, it must be found that the accident was the natural and probable consequence of the act of the servant in having left the alcohol upon the highway. The law requires that the injury must so directly result from a wrongful act that, according to common experience and the usual course of events, it might under the particular circumstances have reasonably been expected. (Jex v. Straus, 122 N. Y. 293.) We do not agree that the facts in this case created a condition the result of which might under the circumstances have been reasonably expected, and the liability of the defendant in this case it seems to us has been settled in analogous cases adverse to the claim of plaintiff. (Beetz v. City of Brooklyn, 10 App. Div. 382; Fitzgerald v. Rodgers, 58 App. Div. 298.) To hold

the defendant liable in damages upon the facts in this case would, we think, establish a rule of liability beyond that of any of the adjudged cases." To like effect see Donahue v. Kelly, 181 Pa. 93; and as to when a defendant is not liable for injury to a child, see Guilmartin v. Phila., 201 Pa. 518; Selve v. Pilosi, 253 Pa. 571; Milligan v. Bell Tel. Co., 62 Pa. Superior Ct. 197.

Defendants have been held liable for maintaining dangerous agencies in places known to be frequented by children, such as unguarded machinery, exposed live wires or explosives, open trap doors or pits, fires, etc.; but in each of these cases there was present a real danger such as under the circumstances should have been foreseen and guarded against. No case has been called to our attention, and we have found none, where a legal liability has been predicated because of injury by a thing so apparently innocuous as a dead wire upon the side of a fence. Had it been a live wire the case would be entirely different. As has been said, "wisdom after the event is easy," but there was nothing in the situation here by which such an injury could reasonably have been anticipated. The danger could not have been manifest as both families freely permitted their little boys to play around the fence and wire until the moment of accident.

We recognize that in many instances owners and occupiers of real property are held to a different standard of liability in case of injuries to children coming upon their premises from that with respect to adults; and those who have a lawful right on the premises, knowing children to be there, stand in the same relation as to liability for their negligent acts to them as do the owners; where children are expressly or impliedly invited on the owner's premises it is his duty, and that of those having a lawful right there, to exercise ordinary care with respect to the rights of the children, as well as others on the property. The law demands the use of due, reasonable and ordinary care; but under the operation of this principle, it is a general rule that where an

appliance, machine, structure or object is not obviously or inherently dangerous, and has been in daily use, and has proved uniformly adequate, safe and convenient, it may be further continued without the imputation of negligence, although it might have been made safer at slight expense. The owner is not required to anticipate and guard against dangers which might result from the improper use of objects which are safe in themselves and safe for the use for which they are designed. There are many such on a person's property which childish impulse or curiosity might make a source of danger, and where an injury resulting therefrom could not be blamed upon the owner or the child. The wire, as it rested along the fence, was not in itself inherently dangerous, nor in any sense an attractive appliance; and the rule as to the latter only applies where the owner of land brings or permits thereon something of an artificial nature, which is both attractive and dangerous to children; then he is bound to use reasonable care for their protection. An owner is never held negligent for failure to anticipate injury to children or adults from appliances not dangerous nor likely to become so.

The fact that defendant's foreman was notified that children played in the yard, and was requested to put the wire where they would not be playing, is important as notice of the habits of the children, but does not fasten liability upon defendant in the absence of evidence tending to show that the wire was so placed as to create a probability that injury would result therefrom. In other words, the notice did not impose upon the defendant the liability of an insurer of the safety of the children, especially not those of a third party.

A spear-pointed railing around an area-way in a sidewalk is lawful and imposes no liability upon the owner to one injured thereby: Kelly v. Bennett, 132 Pa. 218.

The evidence here not only fails to show negligence but fails to show any circumstances from which an inference of negligence can reasonably be drawn; and the

facts being simple, and not controverted, their legal value is for the court to determine: Davidson v. L. S. & M. S. Ry., 171 Pa. 522; Wolf v. Phila. Rapid Transit Co., 252 Pa. 448; Wood v. Phila. R. T. Co., 260 Pa. 481.

The assignments of error are overruled and the judgments are affirmed.

DISSENTING OPINION BY MR. JUSTICE SIMPSON:

It would seem as if the differing conclusions in this case ought to be resolved by a determination of what really is the question at issue. It is not whether the wire strung by defendant along the fence between the two properties, was or was not innocuous, or whether its original location was dangerous, or whether any witness, lay or expert, so testified, for no injury occurred by reason either of condition or location thereof; nor whether plaintiff might have tripped over something else, innocently and properly placed, for the evidence shows he did not; nor whether the wire formed "a loop in the sense of a noose so as to imprison the boy's foot" (by which is meant, I presume, a running noose), for the evidence showed it sagged, and with the fence as a background formed a hanging loop in which the boy's foot could be and was caught; nor whether a judge would find it less difficult to see how he could have tripped on this loop rather than on the top of the fence, for the evidence shows the fall was due solely to the loop; nor whether the accident "happened here because the boy's hand missed or slipped from the clothesline" which extended from the clothespole at the fence to the porch of the adjoining house, though the evidence shows the catching of the foot in the wire "pulled his hand off the rope"; but it is whether a jury might have found defendant could and should have avoided inflicting the injury by not permitting the wire to sag and remain for months in the form of the loop in which plaintiff's foot was caught, when it knew the "children in the neighborhood," of whom plaintiff was one, were in the habit of going "from

one home to the other," as admittedly they had the right to do by climbing the fence. In determining whether or not such a duty existed and was breached, we must accept the following evidence favorable to plaintiffs as absolutely true:

Two adjoining neighbors had small children who had permission so to do and were in the habit of climbing over the iron fence separating the yards of two properties, so that they might play together instead of separately. One of the neighbors desired a telephone installed in her house, and defendant was requested to place it there. When its employees came for this purpose, instead of running the telephone wire overhead in the usual way, they ran it along the division fence, opposite the upper cross bar thereof, though then informed of the habit of the children as above set forth, and though requested "to put it where children would not be playing." Subsequently a portion of it became loose and sagged in the form of a loop as above described. It remained this way for some months, whereby defendant had constructive notice of the fact, and its employee, when he came to use the telephone in the house, was asked "repeatedly to have the wire adjusted," thereby receiving express notice also; but nothing was done. On the day of the accident, plaintiff, who was between four and five years old, was climbing over the fence as usual, when his foot caught in the loop in the manner as above stated, and he was thrown to the ground and seriously hurt.

The majority opinion admits plaintiff was not a trespasser, had a right to climb the fence, and was not guilty of contributory negligence; and it seems also to concede defendant could be held liable if reasonably it should have known the wire would become dangerous to children, if allowed to hang down and assume a form in which the foot might naturally be caught. The exact difference between us seems to be that the majority do not see how the foot of a child climbing down the fence would probably catch in the loop; whereas I cannot

understand how any one who has seen a child climb down a fence, and has seen his little foot groping for the safe resting place of the lower rail, can doubt for a moment that it would naturally catch on this sagging wire, or in the loop formed by it and the fence, and thereby just such an accident as here depicted would result. This would not be altered by the fact that the wire hung close to the fence, for so would the child's foot be close thereto in reaching down. I concede that an "owner is not required to anticipate and guard against dangers which might result from the improper use of objects which are safe in themselves and safe for the use for which they are designed"; but here, as the majority admits, there was no "improper use" of the fence, and the lack of safety grows out of allowing an object which is safe in itself to become unsafe and to remain so for months. So, assuming that as "a general rule......an object [which] is not obviously or inherently dangerous, and has been in daily use, and has proved uniformly adequate, safe and convenient,......may be further continued without the imputation of negligence, although it might have been made safer at slight expense," this conclusion has no applicability here, and will not excuse the failure to incur the "slight expense" which would have saved plaintiff, for there was no evidence or presumption of the "uniformly......safe" condition of this wire after it sagged; but, on the contrary, there was evidence, and also, in my judgment, a violent presumption, founded on common experience, that it was highly dangerous to children climbing the fence; and, in any aspect of the matter, the question was one for a jury to decide. If also we assume defendant only owed the duty of ordinary care to safeguard the children of tender years who were in the habit of climbing the fence, none the less it was peculiarly within the province of a jury, in such cases, to determine whether or not it exercised that care: Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300, 304; Piepke v. Phila. & Reading R. R. Co., 242 Pa. 321.

I would reverse the judgment and submit the case to a jury to determine (1) whether or not defendant had notice of the fact that the wire had sagged and hung in the form of a loop, and ample time within which to repair it, (2) whether or not it should have known this condition would probably cause injury to plaintiff when he rightfully climbed the fence, and (3) whether or not he was injured as a result of the failure to repair; and, since there was no evidence that the father, who was a coplaintiff, even knew the wire hung in the form of a loop, his rights should also have been submitted to that tribunal.