No. 43,688

ELMER CHAPLIN, *Appellant,* v. THE GAS SERVICE COMPANY, a Corporation, and ANDREW ROSE, *Appellees.*

(397 P. 2d 317)

Opinion filed December 12, 1964.

*Russell Cranmer,* of Wichita, argued the cause, and *Gerald L. Michaud, Thomas A. Wood, M. William Syrios* and *Orval L. Fisher,* all of Wichita, were with him on the briefs for the appellant.

*F. C. McMaster,* of Wichita, argued the cause, and *P. K. Smith* and *Stanford J. Smith,* both of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This is an action brought by the plaintiff, Elmer Chaplin, against the defendants, The Gas Service Company and its employee, Andrew Rose, to recover for medical expenses incurred in treating his seven-year old son, Ernest E. Chaplin, for burns alleged to have resulted from the defendants' negligence. The

trial court sustained a demurrer to the plaintiff's petition and this appeal followed.

The action is predicated on the alleged negligence of The Gas Service Company's agent and employee, Andrew Rose, while acting within the scope of his employment. The allegations of negligence are contained in paragraphs IV, V and VII of the plaintiff's petition, which read as follows:

"IV. In October, 1960, the flame on the cooking stove and furnace in the home of the plaintiff became low. Often times the pilot light would go out. Because of this trouble with the gas stove and furnace, Geraldine Chaplin, wife of Elmer Chaplin, called by telephone the defendant corporation and advised one of its employees, whose name is not known to plaintiff, but well known to the defendant, of the afore-described condition of the gas stove and furnace. The defendant corporation sent one of its employees, whose name is unknown to plaintiff but well known to defendant corporation to plaintiff's home to check the gas lines, meter and appliances. The condition afore-described continued. Thereafter, on January 24, 1961, Geraldine Chaplin again called by telephone the defendant corporation and advised one of its agents, whose name is unknown to plaintiff but well known to the defendant corporation, that the afore-de-scribed condition of the low flame still existed. The defendant corporation sent the defendant Andrew Rose to the premises of the plaintiff and the defendant Andrew Rose turned off the gas, installed a new meter and cleaned out the gas pipes. During the time that the afore-described work was being done by the defendants the gas was turned off and the house became cold.

"V. After the defendants had completed the afore-described work, the defendant Andrew Rose lit the four burners and oven on the kitchen stove. Ernest E. Chaplin, the minor son of plaintiff, who had been in bed, got up and went into the kitchen of said house to get warm. The defendant Andrew Rose then went into the den to light the furnace pilot light which was under the house. The defendant Andrew Rose called to Geraldine Chaplin and it was necessary for her to leave the kitchen and go into the den to hear said defendant Andrew Rose and answer his questions. After Geraldine Chaplin left the kitchen she heard Ernest E. Chaplin screaming and when she ran back into the kitchen she found the pajamas of Ernest E. Chaplin had caught fire from the open flames that the defendant Andrew Rose had left burning on the stove. Geraldine Chaplin put out the flaming pajamas.

"VII. The damages which this plaintiff has sustained are the direct and proximate results of the following acts of negligence of the defendants:

"(1) In failing and neglecting to have sufficient workmen to do the job and particularly to relight the furnace pilot light.

"(2) In leaving the kitchen after lighting the burners on the kitchen stove and leaving an open flame burning on the kitchen stove.

"(3) In calling Geraldine Chaplin out of the kitchen while an open flame was burning on the kitchen stove."

At the outset, plaintiff insists that his petition is to be liberally construed in his favor, that all facts well pleaded are to be taken as

true and that he is entitled to all favorable inferences which may be drawn from the pleaded facts. We agree that such are, indeed, the standards by which the sufficiency of plaintiff's pleading is to be tested. (*Schiffelbein v. Sisters of Charity of Leavenworth*, 190 Kan. 278, 280, 374 P. 2d 42.) Even so, we are not convinced that the petition sets forth a cause of action.

No authorities have been cited from this or any other jurisdiction based on facts similar to those involved in this action. Neither has our research uncovered any parallel case, and we doubt that the identical question presented here has ever been passed upon. The Kansas cases cited in plaintiff's brief may not be said to furnish support for his position because of factual dissimilarities. They involve situations where liability was imposed for negligence in the installation, inspection or maintenance of gas lines or appliances resulting either in the escape of gas and ensuing explosions or in faulty combustion with consequent carbon monoxide gas.

In the absence of identical precedents, the petition must be measured by general legal standards. A reference to even the most rudimentary principles governing the law of negligence will demonstrate the fallacy of plaintiff's hypothesis. Negligence has a well recognized meaning in law as being the lack of due care under prevailing circumstances. (*Shufelberger v. Worden*, 189 Kan. 379, 383, 369 P. 2d 382; *Townsend, Administrator v. Jones*, 183 Kan. 543, 554, 331 P. 2d 890.) In *Blackmore v. Auer*, 187 Kan. 434, 357 P. 2d 765, this court defined the term in the following fashion:

"It may· be said negligence is the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, as a result of which such other person suffers injury." (p. 440.)

As seen from paragraph VII of the petition, three grounds of negligence are relied upon. These may briefly be noted. First, it is alleged that the defendants failed to have sufficient workmen to do the job and relight the furnace pilot light. This is but a bare conclusion, unsupported by any allegation of fact. Nowhere is it alleged that more than one workman was required or was customarily employed to perform the work done by Rose. Neither does the petition set out that Rose was not competent to perform the task assigned him, nor that the work was faultily performed. Furthermore, it would be ridiculous to suppose that one workman would be required to light the stove and another to light the furnace.

Plaintiff next asserts that Rose was negligent in leaving the kitchen with the stove burners lighted. Why should this constitute negligence? Gas burners are made to light and we believe it commonplace for housewives, as well as others, to leave the burners on as they proceed with other chores. Furthermore, plaintiff's house was cold and heat was wanted. The writer well recalls the many chilly mornings when the kitchen stove was lighted to repel the frost. The family huddle over the welcome warmth of the open flames was an institution which we doubt not continues in many homes to this day. But most important of all, Rose did not leave the boy alone in the kitchen, but with his mother. The youngster was left in the company of the very person who normally would be most concerned for his safety and well-being. Under this circumstance especially, we cannot believe that Rose can be said to have evidenced indifference or lack of prudence in leaving the kitchen while the burners remained lighted.

Plaintiff's third, and possibly gravest, specification of negligence is "in calling Geraldine Chaplin (the mother) out of the kitchen while an open flame was burning on the kitchen stove." As to this ground, it first might be noted that the petition does not allege that Rose called the mother out of the kitchen, but that he called to her and it was necessary for her to leave the kitchen to hear Rose and answer his questions. However, regardless of technicalities of language, it appears to us that Rose may not be charged with negligence in calling to Mrs. Chaplin. When he left the kitchen to light the furnace, the boy was attended by his mother and there was no reason to anticipate that she would leave him in a place of peril. The presumption would, indeed, be quite the opposite; any normal person would expect a mother to be diligent in protecting her child from danger.

It is a well recognized rule of law, frequently applied by this court, that one is not negligent in failing to anticipate danger which could not reasonably be expected. (*Davies v. Shawver,* 134 Kan. 772, 8 P. 2d 953; *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605.) In *Blackmore v. Auer,* supra, it was said:

"An act is wrongful, or negligent, only if the eye of vigilance, sometimes referred to as the prudent person, perceives the risk of damage. The risk to be perceived defines the duty to be obeyed, and *risk imports relation;* it is risk to another or to others within the range of apprehension. (*Palsgraf v. Long Island R. R. Co.,* 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253; and Seavey, Negligence, Subjective or Objective, 41 Harv. L. Rev. 6.) . . ." (p. 441.)

To similar effect, the principle was stated in *Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590:

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur." (Syl. ¶ 8.)

In the discussion found in 24 Am. Jur., Gas Companies, § 21, it is said:

"It has been declared that the test of proximate cause is whether the events between the negligent act and the final result are so linked together that they become a natural whole. In other words, in the determination of whether the act of a gas company is the proximate cause of an injury, the injury must be the natural and probable consequence of the act; the injury must be one that the company, in the exercise of ordinary care, might have and ought to have anticipated as likely to result. . . ." (p. 681.)

We see nothing in the circumstances alleged which would reasonably lead Rose to suppose that when he called to Mrs. Chaplin she would do or fail to do anything which might subject her son to any hazard or risk.

The defendants make the further contention that the plaintiff is precluded from recovery because of his wife's negligence in leaving her young son alone in the kitchen with the lighted stove. This point, however, need not now be determined in view of the decision we have already reached.

For the reasons hereinabove set out, we conclude that the trial court was correct in sustaining the defendants' demurrer to the plaintiff's petition and that its judgment must be affirmed.

It is so ordered.