No. 103,373

RODNEY P. WRINKLE, *Appellant*, v. GENE NORMAN and
CHARLENE NORMAN, *Appellees*.

(301 P.3d 312)

Opinion filed May 17, 2013.

*Stephen G. Dickerson*, of The Dickerson Law Group, of Olathe, argued the cause and was on the briefs for appellant.

*Robert J. Luder*, of Long & Luder, P.A., of Overland Park, argued the cause and was on the brief for appellees.

*Per Curiam*: The appellant, Rodney Wrinkle, was injured in the course of providing aid to a calf that he was escorting onto a neighbor's property. He sued to recover medical damages from the neighbor, and the district court granted the Normans' motion for summary judgment. Because the district court applied the incorrect standard for the duty of care in this case, we remand for the submission of new arguments predicated on the proper duty.

Based on the pleadings and the record developed through deposition testimony, the circumstances of Wrinkle's injury were as follows:

On the afternoon of March 10, 2006, Wrinkle and his friend Raymond Lee observed four or five cows wandering loose in front of property belonging to Gene and Charlene Norman, and some of the cattle were straying toward the highway that ran between Wrinkle's and the Normans' property. Wrinkle was riding his lawn tractor, and he signaled to approaching cars to slow down. Initially riding on his lawn tractor and then going on foot, Wrinkle proceeded to herd the cattle into the Normans' yard. The Normans' gate was open, and Wrinkle herded the cows through the gate toward a pen. Wrinkle testified at his deposition that he had no reason to believe that the Normans consented to his entry onto their land.

A clothesline wire was attached in some fashion to a pole in the Normans' yard. According to his deposition testimony, Wrinkle did not see how it was attached when he entered the yard; it may have been hanging looped like a lasso over the pole, and some of it may have extended to the ground.

As Wrinkle herded the cattle across the Normans' yard toward the cow pen, one calf strayed into the clothesline wire, caught the line around its neck, and began to choke. Wrinkle grabbed the back of the clothesline and walked around to the other side, flipping the line several times in order to remove the line from the calf's neck. The calf took off running toward the gate of the pen, apparently catching the clothesline somehow, so that the clothesline caught Wrinkle from behind. Wrinkle's feet went out from under him, and he landed on his back on a concrete pad.

Wrinkle immediately experienced severe pain. Lee helped him get home, and Wrinkle eventually went to the hospital, where he was diagnosed with a broken back. He was hospitalized for 30 days. Afterward, he approached the Normans in person about the injury and later wrote a letter in which he asked that they submit to their insurance carrier a claim for $44,115.72, which was the outstanding balance on his hospital bill. The Normans apparently refused to arrange for payment of the medical expenses.

Wrinkle then filed an action grounded in negligence alleging that the Normans had created a dangerous condition on their property

that presented an unreasonable risk of harm by leaving their gate open and by leaving a clothesline wire running across the ground.

The Normans filed a motion for summary judgment. They maintained that Wrinkle was a trespasser on their land, that they were not negligent because they were unaware that their clothesline presented a danger, and that Wrinkle failed to proffer evidence that they did not take reasonable care for the safety of others.

The district court granted the Normans' motion for summary judgment, holding that Wrinkle was a trespasser on the Normans' property and they had breached no duty toward him. The district court denied Wrinkle's motion to alter or amend judgment, and Wrinkle filed a timely notice of appeal.

In a published opinion, the Court of Appeals affirmed the district court. *Wrinkle v. Norman*, 44 Kan. App. 2d 950, 242 P.3d 1216 (2010). This court granted review without limitation.

*The Duty of Care*

A landowner's duty to both invitees and licensees is one of reasonable care under all the circumstances. *Jones v. Hansen*, 254 Kan. 499, Syl. ¶ 2, 867 P.2d 303 (1994). The landowner owes trespassers, on the other hand, only the duty "to refrain from willfully, wantonly, or recklessly injuring" the trespasser. 254 Kan. at 510.

The district court found that Wrinkle did not have express or implied permission to enter the Normans' property and he was therefore a trespasser. Because he was a trespasser, the Normans owed him a duty only to refrain from willfully, wantonly, or recklessly injuring him.

The Court of Appeals affirmed, holding that Wrinkle was a trespasser because "there was no evidence that the cattle were owned by the Normans." 44 Kan. App. 2d at 956. The court further held that, even if Wrinkle were privileged by private necessity to enter the Normans' property, the Normans owed no greater duty of care toward him than they would to a trespasser. In so holding, the court relied on an Illinois appellate case, *Lange v. Fisher Real Estate Develop.*, 358 Ill. App. 3d 962, 970, 832 N.E.2d 274 (2005):

" ' "One could argue, as the plaintiff does, that a trespasser who enters the property of another under private necessity, considered to be a licensee, is now entitled

to the greater protection of reasonable care since there is no longer a distinction between licensees and invitees. We would disagree with such an argument. We believe that the abolishment of the licensee/invitee distinction in Illinois would not heighten the duties owed by a possessor of land to a person who enters his land under private necessity. There can be no logical reason to afford a greater protection of reasonable care to such a person, who, in actuality, is a trespasser and who enters the property without the possessor's permission and without benefit to the possessor." ' [Citation omitted.]" 44 Kan. App. 2d at 956.

The Court of Appeals then asserted that Wrinkle had made no showing that the cattle belonged to the Normans and he must therefore have been a trespasser. That conclusion was dubious; there was some evidence both for and against ownership of the cattle by the Normans, and a jury could probably have come to either conclusion. The evidence supporting the theory that the Normans owned the cattle consisted of some testimony that Wrinkle had seen cattle on the Normans' land in previous years and that some people reported having seen cattle on the Normans' land right around the time of Wrinkle's injury. Furthermore, Wrinkle testified that he had no difficulty herding the cattle onto the Normans' land, as if the cattle were familiar with the gate and the pen. In addition, Gene Norman testified that he never found strange cattle in his pen, which would be surprising if Wrinkle had in fact herded someone else's cattle onto his property. But this issue of fact loses its importance in light of the credible testimony that Wrinkle had a valid reason to believe that the cattle belonged to the Normans, even if he was wrong.

Wrinkle urges this court to adopt the Restatement (Second) of Torts § 197 (1965), relating to private necessity as an exception to the rules of trespass. Wrinkle contends that the Restatement section, if adopted in Kansas, would enhance the duty that the Normans owed him. Restatement (Second) of Torts § 197 creates a privilege in the event of necessity:

"(1) One is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to

(a) the actor, or his land or chattels, or

(b) the other or a third person, or the land or chattels of either, unless the actor knows or has reason to know that the one for whose benefit he enters is unwilling that he shall take such action.

"(2) Where the entry is for the benefit of the actor or a third person, he is subject to liability for any harm done in the exercise of the privilege stated in Subsection (1) to any legally protected interest of the possessor in the land or connected with it, except where the threat of harm to avert which the entry is made is caused by the tortious conduct or contributory negligence of the possessor."

Kansas has not expressly adopted Restatement (Second) of Torts § 197. As the Court of Appeals noted, this section of the Restatement does not in itself change the duty of care owed to the actor. A review of the comments and illustrations accompanying § 197 make it clear that the section addresses only the liability of the actor to the possessor of the property; that is, it sets out under what situations may one enter the property of another without incurring liability for trespass or for damage resulting from the entry and use of the property. Section 197 by itself speaks to the opposite of the situation in the present case, in which an actor seeks damages from the possessor of the property.

A different section of the Restatement, Restatement (Second) of Torts § 345 (1965), addresses the kind of situation that the present case presents:

"(1) Except as stated in Subsection (2), the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee.

"(2) The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee."

In Kansas, the effect of these two provisions, when read together, is to create a presumption of implicit permission for one party to enter the property of another in order to prevent certain kinds of serious harm, and the possessor of the property has a duty of reasonable care to protect the wellbeing of the person exercising that privilege.

We regard the Restatement rules as sound and adopt them with modifications. In our view, they promote a willingness to assist others in times of need without taking on a greater burden of risk than others who enter property as merely casual visitors. Restate-

ment (Second) of Torts § 197 makes it possible for a Good Samaritan to enter the property of another for the purpose of averting great property loss or personal injury without having to suffer the consequences of being deemed a trespasser.

Without passing judgment on the factual determinations to be made in the present case, it is not difficult to imagine scenarios in which the Restatement provisions provide the superior analytic framework. Suppose that an individual hears screams from across the street and sees a neighbor's house in flames. The individual rushes to the house and attempts to enter it in order to aid someone trapped inside but falls through a rotted step on the way in, injuring himself. Without the two Restatement sections, the would-be Good Samaritan could be found liable for trespass or would not be able to bring an action for negligently maintaining the premises. Applying the Restatement rules, the helpful neighbor would be protected from being the target of litigation himself and would be eligible for damages for the injuries that he suffered as a consequence of the hidden defect. See *Mercer v. Hawes*, No. 534,145, 1995 WL 506072 (Conn. Super. 1995) (unpublished opinion); *cf.* Restatement (Second) of Torts § 345, comment d, illustration 1.

In adopting the Restatement provisions, we acknowledge that certain aspects of Kansas civil procedure and common law require modification of those rules. Restatement (Second) of Torts § 197, paragraph 2, limits the privilege where entry is for the benefit of the actor or a third person, except when the danger that justifies the entry is caused by the tortious conduct or contributory negligence of the possessor. That portion of the Restatement rule is modified to reflect principles of comparative fault that govern in Kansas.

Similarly, Restatement (Second) of Torts § 345 differentiates between the duty of care to public officers or employees who enter the land in the performance of a public duty and the duty of care to others exercising a privilege. Because Kansas no longer differentiates between the duty of care to a licensee and to an invitee, we adopt § 345 without distinguishing between the duties in paragraphs (1) and (2); the duty is always one of reasonable care under all circumstances.

The defendants based their motion for summary judgment on theories of trespass, and the district court likewise decided the motion without the benefit of the rules that we recognize in this opinion. The parties should not be penalized because this court has adopted a rule that has not been discussed in previous caselaw.

In addition, we find the plaintiff's theory of liability under K.S.A. 47-122 and K.S.A. 47-123 to be moot. The standard of care for actions under those statutes is one of reasonable precaution or due care in keeping cattle from running at large. *Clark v. Carson*, 188 Kan. 261, 265, 362 P.2d 71 (1961) (reasonable or due precaution); *Wilson v. Rule*, 169 Kan. 296, 303, 219 P.2d 690 (1950) (due care); *Walborn v. Stockman*, 10 Kan. App. 2d 597, 599, 706 P.2d 465 (1985) (due care). The duty of reasonable care is essentially the same as the duty under the theory that the Normans were negligent in the manner of storing their clothesline. Because Wrinkle asserts that the injury occurred on the Normans' property and in the course of attempting to protect the Normans' calf, it is that theory of negligence that governs the duty of care.

The dissent raises several points that, if properly argued in the pleadings to the trial court and then advanced on appeal, might have provided grounds for us to reach a different result. Although the parties mentioned in their pleadings alternative grounds for summary judgment in passing, their focus was clearly on the question of whether Wrinkle was a trespasser. Other arguments were mentioned but were not supported by a developed legal analysis, and the district court did not address those peripheral arguments in its written decision. We remind parties that points incidentally raised but not argued are deemed abandoned. See *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994).

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

\* \* \*

ROSEN, J., concurring in part and dissenting in part: Although I agree with the majority that courts in Kansas should adopt the relevant Restatement sections, Restatement (Second) of Torts §

197 and Restatement (Second) of Torts § 345, I respectfully dissent from that portion of the opinion that remands the case to the district court for further proceedings.

My review of the record and the governing legal principles persuades me that summary judgment was appropriate even under the Restatement rules and it is unnecessary to return the case for further proceedings. I base my opinion on three factors.

First, the record and the pleadings show that a clothesline looped around a clothesline pole in plain view on a March afternoon constituted the asserted negligent condition on the defendants' property. I suggest that such a condition simply cannot serve as the basis of a negligence action. A duty to remove any object from one's property that could in any fashion somehow be a factor in an injury to another person entering one's property simply increases the possibility of liability and litigation to an absurd level. With some imagination, one can picture a flower pot, a drainpipe, a trash barrel, or a bicycle playing a role in a series of events leading to injury, even if those items are located in perfectly predictable and ordinary locations.

I suspect that there is little caselaw on the subject precisely because courts and litigators are so unlikely to posit negligence in such circumstances. But in *Nichol v. Bell Tel. Co.*, 266 Pa. 463, 109 A. 649 (1920), as a matter of law the court found there could be no negligence in using an ordinary object in an ordinary way:

"The law demands the use of due, reasonable, and ordinary care; but under the operation of this principle, it is a general rule that where an appliance, machine, structure or object is not obviously or inherently dangerous, and has been in daily use, and has proved uniformly adequate, safe and convenient, it may be further continued without the imputation of negligence, although it might have been made safer at slight expense. The owner is not required to anticipate and guard against dangers which might result from the improper use of objects which are safe in themselves and safe for the use for which they are designed. . . . An owner is never held negligent for failure to anticipate injury to children or adults from appliances not dangerous nor likely to become so." 266 Pa. at 469-70.

See also, *e.g.*, *Falls v. Scott*, 249 Kan. 54, 58-59, 815 P.2d 1104 (1991) (ordinary objects put to ordinary uses not generally considered to be dangerous instrumentalities); *Kos v. Catholic Bishop of*

*Chicago*, 317 Ill. App. 248, 252-53, 45 N.E.2d 1006 (1942) (no duty to remove objects of regular use that may be converted into harmful objects; mere presence of such objects in public area does not constitute negligence).

Furthermore, a landowner "is under no duty to remove known and obvious dangers." *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991). Either the clothesline, hanging in plain view from a clothesline pole in the afternoon, was an obvious danger, in which case the defendants were under no duty to remove it, or it was not in itself a danger, in which case the defendants simply were not negligent. For these reasons, it is a dubious proposition that the defendants breached a duty to the plaintiff, even taking the facts in the light most favorable to him. See *Cresswell v. End*, 831 A.2d 673 (Pa. Super. 2003) (when meter reader fell into window well, no liability by homeowner because homeowner had no reason to know that window well presented unreasonable risk of harm and window well was open and obvious danger from which homeowner had no duty to protect meter reader).

My second concern with sending this case back for further proceedings is that the evidence that the plaintiff provided did not show that the defendants maintained the clothesline in such a way that they breached any duty of care. The record shows that the plaintiff at one time asserted that the clothesline was hanging looped around the pole and was off the ground; another time he asserted that the line partially lay on the ground; and another time he conceded that he never saw how the line was arranged before the calf became entangled in it. In other words, the plaintiff asserts that the defendants maintained a hazardous condition on their property, but he is unable to describe what that condition was. The only relevant fact question before the court or before a jury would be whether the clothesline was negligently strung from the pole, but the plaintiff's own testimony was that he had no idea how the clothesline was strung from the pole.

Finally, I suggest that this court can easily find from the pleadings and record that the plaintiff has failed to establish proximate causation of his injuries, even assuming that he can demonstrate some kind of breach of duty of care. Proximate cause is one nec-

essary element of a successful tort action. Proximate cause is cause " ' "which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred, the injury being the natural and probable consequences of the wrongful act." ' " *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 320, 241 P.3d 75 (2010) (quoting *Rhoten v. Dickson*, 290 Kan. 92, 114-15, 223 P.3d 786 [2010]). Individuals are not responsible for all *possible* consequences of their negligence, but only for those consequences that are *probable* according to ordinary and usual experience. *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008).

An accident that is not reasonably foreseeable by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action. *Woodruff v. City of Ottawa*, 263 Kan. 557, 561, 951 P.2d 953 (1997). Natural and probable consequences are those that human foresight can anticipate because they happen so frequently they may be expected to recur. *Chaplin v. Gas Service Co.*, 194 Kan. 26, 30, 397 P.2d 317 (1964). "It is a well recognized rule of law, frequently applied by this court, that one is not negligent in failing to anticipate danger which could not reasonably be expected." 194 Kan. at 29.

Whether a plaintiff has established proximate cause is ordinarily a question of fact. However, when all of the evidence on which a party relies is undisputed and susceptible to only one inference, the question of proximate cause becomes a question of law. *Hale*, 287 Kan. at 324. Whether an intervening cause precludes liability relates to legal causation and comes into play after the plaintiff has established causation in fact. *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 421, 228 P.3d 1048 (2010).

An intervening cause is one that actively operates to produce harm to another party after the actor has committed a negligent act or omission. An intervening cause absolves a defendant of liability only if it supersedes the defendant's negligence, that is to say, the intervening cause breaks the connection between the initial negligent act and the resulting harm. *Puckett*, 290 Kan. at 421. If, however, the intervening cause is foreseen or was reasonably fore-

seeable, the first actor's negligence may be considered, the intervening cause notwithstanding. *Puckett*, 290 Kan. at 421.

Although the courts below and Wrinkle make much of his status as trespasser or invitee/licensee, it is questionable whether that distinction matters in this case. As the Texas Supreme Court noted in *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999):

"Because [the defendant] was an unforeseeable victim regardless of her status [as invitee, lecensee, or trespasser], it is unnecessary to determine into which of the three categories she falls. Instead, we focus on general foreseeability principles that limit the scope of the defendant's duty in this case."

In the present case, a bizarre series of events took place between the defendants' putative negligent acts of leaving the gate open and leaving a clothesline on a pole, and the ultimate unfortunate injury to the plaintiff. The plaintiff escorted cattle onto the defendants' property; a calf got caught in the clothesline; the plaintiff elected to set the calf free from the clothesline; the calf got caught in the line that the plaintiff chose to pull off of it; and the calf pulled the line in such a way that it knocked the plaintiff down on a concrete pad. It was a calf running free on the defendants' land and the plaintiff's decision to free the calf from the clothesline that immediately caused the injury. The placement of the clothesline was remote to the injury and its potential for causing harm was simply not foreseeable.

In *State Farm v. Huyghe*, 144 Mich. App. 341, 375 N.W.2d 442 (1985), the court considered insurance coverage when the insured defendant tried to drive his truck below a clothesline that was attached to a house by a cleat. The truck hit the line and the cleat tore free from the house and struck the victim in the head. The defendants argued that the victim's injuries resulted from the negligent placement of the clothesline, not from the use of the motor vehicle. The Michigan Court of Appeals disagreed, holding that any risk created by the placement of the clothesline was the result of the truck being driven in that area. 144 Mich. App. at 347.

In the case before us, the immediate cause of injury was a calf somehow knocking down a visitor on the defendants' property. The plaintiff saw the calf and saw the clothesline looped around the

calf. The plaintiff elected to try to remove the clothesline from the calf. Nothing within that sequence of events hints at negligence on the part of the defendants. If the defendants were negligent in leaving a gate open and in leaving a clothesline on a clothesline pole, that negligence was so mitigated by subsequent, intervening, unforeseeable events that the plaintiff's burden of showing proximate causation could not be met. I suggest that this is a classic example of the doctrine of *volenti non fit injuria,* meaning that an individual who voluntarily risks danger cannot recover for any resulting injury. See Black's Law Dictionary 1605 (8th ed. 2004).

The majority would not allow us to consider these factors, but a review of the pleadings below shows that the defendants specifically asked the court to decide that the plaintiff failed to demonstrate a breach of a duty of "reasonable care under all the circumstances." The defendants also argued that the plaintiff failed to proffer proof that the clothesline was attached to the pole in a negligent manner. Furthermore, the defendants explicitly argued that the kind of harm that occurred was not foreseeable and that the chain of causation was interrupted by the plaintiff's decision to free the ensnared calf. It is true that these arguments could have been made more extensively, but they were more than "incidental," and the law does not require a certain number of words or a certain degree of depth to an argument in order to preserve it.

I would decide this case as a matter of law on the basis of the pleadings and record developed before the district court, and I would affirm the judgment of the district court for reasons other than those on which the district court relied.