NOT DESIGNATED FOR PUBLICATION

Nos. 120,618
120,619

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of L.R. and C.R., Minor Children.

MEMORANDUM OPINION

Appeal from Comanche District Court; SIDNEY R. THOMAS, judge. Opinion filed August 9, 2019. Affirmed.

*Robert W. Slinkard*, of Goering and Slinkard, of Medicine Lodge, for appellant natural mother.

*Allison D. Kuhns*, county attorney, and *Charles H. Herd*, guardian ad litem, for appellee.

Before ATCHESON, P.J., HILL and BUSER, JJ.

PER CURIAM: Mother appeals the order of the Comanche County District Court terminating her right to parent C.R., her eight-year-old daughter, and L.R., her six-year-old son, and contends insufficient evidence supports that determination. The evidence shows that Father repeatedly sexually abused C.R., likely physically abused L.R., and terrorized the family. Mother appears to have been cognizant of the abuse and failed to shield the children causing deep emotional rifts with L.R. and especially with C.R. Under the circumstances, the district court ruled correctly in severing the legal relationship between Mother and her children. We, therefore, affirm.

The underlying facts were thoroughly presented during the termination proceedings and are part of the appellate record. The parties are familiar with the details. Given the nature of the evidence, we see no need to recount the sordid particulars here. The evidence showed Father sexually assaulted C.R. multiple times. He has since been criminally prosecuted for and pleaded guilty to aggravated indecent liberties with a child based on his abuse of C.R. Father was sent to prison for that conviction. And he voluntarily relinquished his parental rights with respect to both children in these proceedings.

The dire family circumstances began to unfold in January 2016 when C.R. acted out in a sexually explicit manner on a school bus. School officials reported the incident to State authorities, prompting the Department for Children and Families to investigate. A home inspection revealed unsanitary conditions and other indicators of parental neglect of the children. L.R. had untreated bites or sores. His bedroom contained cat feces and had an exterior lock on the door. The State immediately sought and obtained an order for temporary custody of both children.

C.R. described Father's sexual abuse of her to law enforcement officers and forensic investigators. According to C.R., Mother witnessed some of that abuse and discouraged any disclosure of Father's misconduct. The investigation moved forward on parallel paths—one probe based on Father's criminal conduct and the other based on Mother's and Father's unfitness to parent C.R. and L.R. The district court adjudicated the children in need of care without objection from either Mother or Father, and they remained in State custody.

The guardian ad litem for the children filed a motion to terminate Mother's and Father's parental rights to C.R. in December 2017 and a like motion as to L.R. in January

2018. After Father voluntarily relinquished his rights, the district court heard three days of evidence in June 2018 regarding the termination of Mother's rights. The district court filed a 20-page journal entry and order about a month later finding Mother to be unfit and terminating her right to parent C.R. and L.R. The district court identified 10 statutory grounds supporting Mother's unfitness. The district court found the circumstances were unlikely to change in the foreseeable future and the children's best interests were served by terminating Mother's parental rights.

Without attempting to survey all of the evidence presented during the termination proceeding, we mention some particularly salient portions of the record.

• C.R. described to law enforcement and forensic investigators a pattern of sexual abuse in which Father repeatedly physically violated her. C.R. told the investigators Mother witnessed some of the abuse and was aware of other incidents. According to C.R., Mother did nothing to stop the abuse and actively dissuaded her from telling anyone about what was happening. As we have said, Father admitted the sexual abuse of C.R. as part of his guilty plea in the criminal case against him.

• During the investigation, Mother tried to conceal Father's cell phone and other electronic devices that turned out to contain incriminating evidence.

• Some circumstantial evidence indicated L.R. may have been sexually or otherwise physically abused. He was developmentally delayed when placed in foster care and displayed self-harming behaviors. The record evidence shows Father verbally and physically threatened and humiliated both children.

• As part of the family reintegration plan for Mother, the assigned social service agency arranged supervised visits with both C.R. and L.R. C.R. reported feeling unsafe in Mother's home—the same place where she had been abused. After the visits, C.R.'s

3

behavior would regress, and she would act out at school and at her foster placement. C.R.'s therapist concluded the visits were doing C.R. more emotional harm than good and recommended no more visitation. L.R. reacted similarly to the visits with Mother, and his therapist also suggested visitation was counterproductive and should be ended. The social service agency acted on those recommendations and stopped Mother's visits in 2017.

• Mother has a history of alcohol and drug abuse. That history includes arrests for driving under the influence when the children were with her. Mother completed a substance abuse program in early 2017 but had relapsed at least once since then.

• Mother testified at the termination hearing that she has been doing better since leaving Father and completing the substance abuse program. She testified that she did not have a job but had submitted numerous applications. Mother explained her job search was geographically limited because of lack of transportation. In the past, she said she worked intermittently at her stepfather's tree trimming service and did other day labor. Mother's half-brother and her mother also testified that she seemed to be much improved in recent months after breaking up with Father and getting treatment for her substance abuse. Mother has two older children who are half-siblings of C.R. and L.R. Their father testified that Mother often supervises the children during the week and interacts well with them. He testified he had no concerns about Mother's present ability to successfully parent children. Mother continues to live in the home where Father abused C.R. and L.R. Her mother owns the house and has permitted her to stay there.

Mother has timely appealed.

4

On appeal, Mother has identified three issues: (1) The district court lacked sufficient evidence to find her unfit; (2) the district court erred in failing to consider a less drastic alternative to termination, an argument that effectively combines challenges to the findings on the unlikelihood her unfitness would change and the children's best interests; and (3) the social service agency provided Mother inadequate support in attempting to reintegrate the family. Before addressing those issues specifically, we outline pertinent legal principles governing the termination of parental rights.

*Legal Principles*

A parent has a constitutionally recognized right to a continuing relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right entails a substantive liberty interest shielded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may terminate a parent's right to raise a minor child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After children have been adjudicated in need of care, as happened here, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to

change in the foreseeable future." K.S.A. 2018 Supp. 38-2269(a). The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). And the statute lists four other conditions to be considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c).

The specific statutory factors are illustrative of parental "unfitness," but the Code contains no formal definition of the term. The Kansas Supreme Court has surveyed cases discussing unfitness in termination proceedings and suggests the condition rests on unsuitability and incompetence, often coupled with some moral dereliction. *In re Brooks*, 228 Kan. 541, 546-47, 618 P.2d 814 (1980). This court has equated unfitness with the "incapacity to perform parental obligations." *In re A.N.P.*, 23 Kan. App. 2d 686, 692, 934 P.2d 995 (1997); see *In re Adoption of A.M.M.*, No. 109,247, 2013 WL 5507483, at *5 (Kan. App. 2013) (unpublished opinion); *In re Baby Girl E.*, No. 103,740, 2010 WL 4668356, at *4 (Kan. App. 2010) (unpublished opinion). A single statutory ground may be sufficient to establish unfitness. See K.S.A. 2018 Supp. 38-2269(f).

In assessing the unlikelihood of change in the foreseeable future under K.S.A. 2018 Supp. 38-2269(a), we gauge the permissible duration using "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a district court's decision to terminate parental rights is challenged, an appellate court will uphold the findings of

6

unfitness and unlikelihood of change if, after reviewing the evidence in the record in a light most favorable to the prevailing party, they are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances justify unfitness and unlikelihood of change as components of the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Here, we must view the evidence presented at the hearing in a light favoring the termination order, since the guardian ad litem prevailed on the motions to terminate.

*Mother's Unfitness*

Under the Code, parents may be unfit because they cannot provide for the physical well-being of their children. That sort of care includes adequate housing, food, and clothing, along with the financial means to secure those tangible necessities. But parents also may be unfit if they are incapable of nurturing the mental and emotional well-being of their children. Those dual considerations of physical and emotional stability run through the grounds for unfitness. See, e.g., K.S.A. 2018 Supp. 38-2269(b)(1)-(4), (g)(1). So the sort of proper care contemplated in K.S.A. 2018 Supp. 38-2269(a) entails both. See *In re T.C.*, No. 112,619, 2015 WL 4758672, at *6 (Kan. App. 2015) (unpublished opinion) (termination of parental rights affirmed where evidence, including expert testimony from children's therapists, showed "further contact between Mother and the children was going to be harmful to them, not helpful or nurturing").

Here, the evidence showed that Father terrorized the children over an extended time. He unquestionably sexually abused C.R., likely physically abused L.R. in some manner, and otherwise emotionally and psychologically assailed both of them repeatedly.

7

There is no reason to mince words here. The evidence also showed Mother to be complicit in Father's misconduct. She appears to have facilitated the abuse and certainly did nothing to end it or otherwise shield the children. C.R. and L.R. understandably and reasonably perceive Mother as having been complicit.

C.R. and L.R. have been traumatized by what they have been through. After the State stepped in and removed them from that environment, their interactions with Mother, as part of the plan designed to reintegrate the family, proved to be emotionally destabilizing for them. Both children discernibly regressed and deleteriously acted out following visits with Mother. Each child's therapist reported that the counterproductive consequences of the visits far overshadowed any limited benefits. In short, the visits weren't repairing the familial wreckage; they were accelerating the damage at the expense of the children's emotional health. The assigned social service agency stopped the visits. Neither therapist suggested a course of care leading to a resumption of visits, let alone family reintegration. Mother offered no evidence of a viable therapeutic plan for establishing some measure of emotional and psychological normalcy to her relationship with either C.R. or L.R.

Tying those circumstances to the statutory treatment of unfitness, Mother's conduct created a deep emotional and psychological fissure with her children that persisted through the termination hearing. So much so that the children suffered emotionally simply by being in Mother's presence for any measurable time. Visits between Mother and C.R. and L.R. were harmful to the children. That circumstance— whether it be labeled Mother's "conduct" or "condition"—rendered her "unable to care properly" for the children within the meaning of K.S.A. 2018 Supp. 38-2269(a).

Likewise, Mother's conduct toward the children when they were living with Father and the residual adverse psychological impact on the children was emotionally cruel or abusive within the meaning of K.S.A. 2018 Supp. 38-2269(b)(2). And Mother's conduct

8

amounted to "mental or emotional abuse or neglect" of the children within the meaning of K.S.A. 2018 Supp. 38-2269(b)(4). In addition, the assigned social service agency undertook reasonable efforts to rehabilitate the family that failed in that mission, a statutory ground for parental unfitness under K.S.A. 2018 Supp. 38-2269(b)(7).

Although Mother completed some of the assigned tasks for reintegration and otherwise made some improvements in her life, the catastrophic harm to the family had not been substantially fixed more than two years after the State interceded. Even more to the point, Mother's very presence with C.R. and L.R. remained a trigger perpetuating the harm. Those statutory grounds, as the district court found, support the finding of unfitness. The district court outlined other statutory grounds, as well. To go through each of them would needlessly extend this opinion.

In sum, we conclude a reasonable fact-finder would have been persuaded to a high degree of probability that Mother was unfit to parent C.R. and L.R. at the time of the termination hearing. That means there was sufficient evidence of unfitness, disposing of Mother's first issue on appeal.

*Foreseeable Change and Children's Best Interests as Alternatives to Termination*

As we have indicated, for her second issue on appeal Mother argues the district court should have considered an alternative to termination. We take that to be a pitch for continued efforts at reintegration and, therefore, an argument that Mother's unfitness might be alleviated in the foreseeable future or that the children's best interests would not have been served by termination.

As to the first aspect of the argument, nothing in the record suggested either C.R. or L.R. would readily overcome his or her emotional aversion to being with Mother or escape the physical manifestations of that aversion. The emotional and psychological

9

damage had persisted for years, despite the children being in counseling and stable foster placements. Nobody has offered a timetable for any likely, or even possible, change in what remained a pernicious relationship viewed from the perspective of preserving the children's mental and emotional equilibrium. Taking account of child time, the comparatively young ages of C.R. and L.R., and the duration of their placements in State custody, we also conclude a reasonable fact-finder would say it's highly probable Mother's condition of unfitness would not likely change in the foreseeable future.

The other aspect of Mother's argument looks at the best interests of the children. A child's best interests are assessed somewhat differently than unfitness or unlikelihood of change. As directed by K.S.A. 2018 Supp. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests determination. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Without belaboring what we have already discussed, the mental and emotional well-being of the children favored excising Mother from their lives. Close contact with Mother upset both C.R. and L.R., worsening their mental and emotional health. In light of the underlying circumstances—fairly described as horrific—we fail to see what interests of C.R. and L.R. would be advanced by continuing their familial or legal relationship with Mother. The district court grasped the relevant facts and understood the governing law. We are comfortable that other district courts would reach the same best interests

10

determination in comparable circumstances. The district court did not abuse its wide judicial discretion on the best interests component of the termination decision.

*Actions of Social Service Agency*

For her final point on appeal, Mother contends the assigned social service agency did too little to implement the reintegration plan. Mother specifically points to the termination of visits between her and the children. She does not cite other precise shortcomings in the agency's performance. First, of course, the therapists for C.R. and L.R. reported that the visits were bad for the children. It wasn't just that the visits were unproductive, they were counterproductive, leaving the children worse for having participated. Continuing the visits would have conflicted with the basic purposes of the Code. See K.S.A. 2018 Supp. 38-2201(b)(3) (statutory provisions to be "liberally construed" to effect public policies, including "mak[ing] the ongoing physical, mental and emotional needs of the child decisive considerations in proceedings under this code"). Rehabilitative efforts aimed at restoring a family unit are appropriate if the result can be accomplished "without further threat to the children." K.S.A. 2018 Supp. 38-2201(b)(8). As we have already recognized, Mother submitted no contrary evidence suggesting the children would have benefited from further visits or offering a tangible plan with defined benchmarks and a predictive schedule for resuming visits, let alone reintegration.

The remainder of Mother's argument consists of a generic assertion of insufficient rehabilitative services and fails to advance a focused claim for relief. See *Wrinkle v. Norman*, 297 Kan. 420, 426, 301 P.3d 312 (2013) (point raised incidentally on appeal deemed abandoned). Moreover, the agency's efforts bear on only some of the statutory grounds the district court cited in finding Mother unfit. See K.S.A. 2018 Supp. 38-2269(b)(7). But other grounds and the more general statement of unfitness in K.S.A. 2018 Supp. 38-2269(a) are not directly tied to what a social service agency may or may

11

not have done to assist an otherwise failing parent. Grossly insufficient agency assistance could bear on whether a given parent's unfitness might actually be alleviated in the foreseeable future. But that hypothetical case is not this case. See *In re B.T.*, No. 112,137, 2015 WL 1125289, at *8 (Kan. App. 2015) (unpublished opinion) (under K.S.A. 2013 Supp. 38-2269[b][7], district court may weigh whether agency took reasonable steps to reintegrate family but "herculean effort" not required).

*Conclusion*

Having considered the points Mother has raised on appeal, we find no basis for reversing the district court's decision terminating her parental rights as to C.R. and L.R.

Affirmed.