NOT DESIGNATED FOR PUBLICATION

No. 120,491

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of H.J., A.J., and C.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed August 9, 2019.
Affirmed.

*Michael J. Nichols*, of Michael J. Nichols, P.A., of Kansas City, for appellant natural mother.

*Ashley Hutton*, assistant district attorney, and *Mark A. Dupree Sr.*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and GARDNER, JJ.

PER CURIAM: P.T. appeals the ruling of the Wyandotte County District Court terminating her right to parent her three young children. Given P.T.'s admitted inability to house or financially support the children at the time of the termination hearing and the absence of any realistic prospect for a timely change in those circumstances, we find no error in the district court's decision and affirm.

FACTUAL AND PROCEDURAL HISTORY

The Department for Children and Families took custody of H.J., the middle child, shortly after she was born in early 2015 because of her exceptionally low weight that medical professionals characterized as indicative of a failure to thrive. H.J. remained in State custody and a foster placement through the conclusion of the termination

1

proceeding in September 2018. The Department obtained an order to remove A.J. Jr. and C.J. from the home in August 2017 following an incident in which their father broke out most of the windows in their apartment after becoming angry with P.T. At the time A.J. Jr. was just over 4 years old, and C.J. was 18 months old. The Department also uncovered circumstances suggesting C.J., in particular, had been neglected.

A.J. Jr. and C.J. were then adjudicated in need of care, as H.J. had been much earlier. As the social service agency designated to assist the family, KVC formulated a reintegration plan for P.T. that included a series of evaluations and programs geared toward improving her ability to parent. Although P.T. and A.J. Sr. were not married, they had the children in common and lived together. The appellate record suggests A.J. Sr. was mercurial and at least emotionally abusive of P.T. and the children. Agency reports include references to the excessive use of alcohol by both parents and father's physically abusive conduct. The reintegration plan included tasks and objectives related to curbing domestic violence and drug and alcohol misuse.

P.T.'s approach to the reintegration plan that began in 2015 for H.J. could be fairly characterized as lackluster. Even after all three children had been placed in State custody, P.T. had met some of the reintegration objectives but not others. The State filed a motion to terminate the parental rights of both P.T. and A.J. Sr. The district court began the termination hearing in April 2018. A.J. Sr. voluntarily relinquished his parental rights to the children, so he did not participate in the hearing and is not a party to this appeal.

At the hearing, P.T. testified that she had been living with A.J. Sr. in an apartment in Kansas City, Missouri, but they had separated, and he moved out. P.T. told the district court A.J. Sr. had remained on the lease. Nonetheless, P.T. produced what she represented to be a "draft" lease prepared by an employee of the apartment complex showing her as the only adult tenant. P.T. also testified that she had regular work through a temporary employment agency. She said she could not provide paystubs or similar

2

documentation because the agency deposited her pay on an electronic card. P.T. testified she had recently completed various tasks included in the reintegration plan but had no confirming documents from the service providers.

Two KVC caseworkers testified at the hearing. They said P.T. last provided an apartment lease about a year earlier in only A.J. Sr.'s name. They also said P.T. failed to provide documentation of her claimed employment and had not completed all of the reintegration tasks or achieved all of the objectives.

The district court expressed skepticism about much of P.T.'s testimony and in particular about her living arrangements and her employment. As a result, the district court recessed the hearing and directed KVC to investigate P.T.'s present circumstances. The district court scheduled the conclusion of the hearing for mid-July. But the termination hearing didn't reconvene until early September.

At the reconvened hearing, the State called a representative of the apartment complex who testified that P.T. never received a lease in her name and that P.T. and A.J. Sr. had been evicted. A KVC caseworker testified he went through the apartment shortly after the April hearing and saw men's clothing and personal care products in the apartment. He testified that P.T. told him her brother was living there temporarily. P.T. again testified. She admitted she had produced a phony lease at the April hearing and had lied about it in her testimony in an effort to stave off the termination of her parental rights.

P.T. testified she was living with her sister and had recently quit a good job because she could not arrange transportation to and from the workplace. P.T. explained that she had been financially dependent on A.J. Sr. and was struggling to live independently. As a result, P.T. acknowledged she was not in a position to take custody

3

of her children or to parent them. She offered neither a timetable nor an outline for becoming sufficiently independent to do so.

The district court found P.T. to be unfit within the meaning of the Revised Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq. See K.S.A. 2018 Supp. 38-2269(a). The district court specifically cited these statutory grounds for unfitness as to all three children:

• P.T. was physically, mentally, or emotionally neglectful of the children, as provided in K.S.A. 2018 Supp. 38-2269 (b)(4);

• Reasonable efforts of appropriate public and private agencies failed to rehabilitate the family, as provided in K.S.A. 2018 Supp. 38-2269(b)(7);

• P.T. demonstrated a lack of effort to adjust her circumstances or conduct to meet the needs of the children, as provided in K.S.A. 2018 Supp. 38-2269(b)(8); and

• After the children had been removed from the home, P.T. failed to carry out a reasonable plan to reintegrate the family, as provided in K.S.A. 2018 Supp. 38-2269(c)(3).

The district court concluded those conditions of unfitness were unlikely to change in the foreseeable future. In addition, as to H.J., the district court found P.T. to be presumptively unfit under K.S.A. 2018 Supp. 38-2271(a)(6) because the child had been in an out-of-home placement for more than two years, P.T. had failed to carry out a reasonable reintegration plan, and there was "a substantial probability" she would not do so in the foreseeable future. Finally, the district court held that the best interests of the children would be served by terminating P.T.'s parental rights. The district court filed a journal entry of termination on September 21, 2018.

4

P.T. has appealed.

LEGAL ANALYSIS

On appeal, P.T. essentially challenges the sufficiency of the evidence to support the district court's determination she was unfit. We begin our review with the legal principles guiding the courts in termination proceedings.

A parent has a constitutionally recognized right to a continuing relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right entails a substantive liberty interest shielded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may terminate a parent's right to raise a minor child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After children have been adjudicated in need of care, as happened here, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2018 Supp. 38-2269(a). The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). And the statute lists four other conditions to be

5

considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c). A district court may also rely on one or more of the statutory presumptions set out in K.S.A. 2018 Supp. 38-2271(a) to find a parent unfit. A single ground may be sufficient to establish unfitness. See K.S.A. 2018 Supp. 38-2269(f).

In assessing the unlikelihood of change in the foreseeable future under K.S.A. 2018 Supp. 38-2269(a), we gauge the permissible duration using "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a district court's decision to terminate parental rights is challenged, an appellate court will uphold the findings of unfitness and unlikelihood of change if, after reviewing the evidence in the record in a light most favorable to the prevailing party, they are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances justify unfitness and unlikelihood of change as components of the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Here, we must view the evidence presented at the termination hearing in favor of the State, as the party prevailing on the motion.

We begin with the observation that the district court provided no detailed explanation of how specific aspects of the evidence supported the particular statutory grounds it identified in finding P.T. unfit. The journal entry simply identifies the particular subsections of K.S.A. 2018 Supp. 38-2269(b) and K.S.A. 2018 Supp. 38-2271(a) along with a summary of the statutory language. The district court's comments from the bench both at the end of the April portion of the termination hearing and at the conclusion of the hearing in September don't shed much more light on the factual bases for its legal conclusions. We can, however, say with some clarity that the district court considered P.T.'s testimony in April to be less than credible—a determination that was redoubled with her admission in September that she had phonied up the lease and lied about it during her earlier testimony.

We can locate an array of factual anchors in the undisputed evidence, P.T.'s admissions, and the district court's enunciated credibility determinations. First, and perhaps foremost, P.T. was unable to parent her children in September 2018 at the conclusion of the termination hearing. P.T. did not have a residence of her own and was living with her sister. She had no job and, thus, no income. Not to put too fine a point on it, P.T. could nether house nor financially provide for her children, as she conceded. Those are the two most tangible components of adequate parenting within the meaning of the Code. Unfitness entails "conduct or condition" rendering the parent "unable to care properly for a child." K.S.A. 2018 Supp. 38-2269(a). The inability to shelter or support a child cuts to the core of parental duties and obligations. See *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 906-07, 189 P.3d 1157 (2008) (recognizing common-law duty of parent to financially support minor child). Good parenting requires something more in the form of emotional sustenance and moral guidance. But a parent's love and affection alone cannot overcome an inability to materially or emotionally care for a child. This court has recognized that parents who love their children may, nonetheless, be unfit. See *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008); *In re A.L.E.A.*, No.

7

116,276, 2017 WL 2617142, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 986 (2017).

In September 2018, P.T. was unfit within the meaning of the Code. We needn't try to pigeonhole her unfitness into one of the illustrative conditions set out in K.S.A. 2018 Supp. 38-2269(b) or (c). The facts may support unfitness based on neglect or P.T.'s lack of effort to adjust her circumstances to meet the children's needs. But unfitness may rest on the general statutory standard in K.S.A. 2018 Supp. 38-2269(a)—the inability to care properly for a child. See K.S.A. 2018 Supp. 38-2269(b) (district court "not limited to" listed factors in considering unfitness); *In re M.P.*, No. 119,444, 2019 WL 2398034, at *4 (Kan. App. 2019) (unpublished opinion). Here, based on the evidence, a fact-finder could conclude to a high probability that P.T. could not care for her children in September 2018.

The other aspect of unfitness required the State to establish that P.T. would remain unfit for the foreseeable future. Although the unlikelihood of change may be a closer question, the evidence also sufficiently supported the district court's conclusion on that component of the termination decision. Over the course of the unfitness proceedings— more than three years in H.J.'s case—P.T. demonstrated a marked lack of attentiveness and diligence in accomplishing the tasks necessary to regain custody of the children. In April, P.T. resorted to trickery to suggest to the district court she was making progress. That course of conduct does not bode well for P.T. successfully overcoming her unfitness in any reasonable time.

In addition, in September 2018, P.T. had none of the primary tools necessary to parent her children. As we have said, she had neither a suitable residence nor any employment. The record strongly suggests P.T.'s employment prospects were, at best, limited. Her work history over the course of the case was, even based on her testimony,

8

spotty; and even that history was largely unverified. Also, as we have said, P.T. offered no plan for getting on her feet and in a position to regain custody of her children.

Especially taking account of "child time," the district court correctly concluded P.T. was unlikely to become fit in the foreseeable future. H.J. had been in a foster placement virtually her entire life, approaching four years at the conclusion of the termination hearing. By then, C.J. had been in a foster placement for about 40 percent of her life. With no realistic prospect for reintegration in some defined timeframe, the district court acted properly to opt for terminating P.T.'s parental rights and, in turn, opening the path to permanency for the children.

On appeal, P.T. primarily argues that KVC did too little to assist her in accomplishing the objectives of the reintegration plans. And the agency's efforts bear on some of the statutory grounds the district court cited in finding P.T. unfit. But other grounds and the more general statement of unfitness in K.S.A. 2018 Supp. 38-2269(a) are not tied to what a social service agency may or may not have done to assist an otherwise failing parent.

Similarly, although P.T. mentions the best interests determination as a necessary component of a termination decision, she makes no focused argument (and really no argument at all) that the district court erred in that respect. As a matter of completeness and rather than legal obligation, we touch briefly on that component of termination. See *Wrinkle v. Norman*, 297 Kan. 420, 426, 301 P.3d 312 (2013) (point raised incidentally on appeal deemed abandoned).

A child's best interests are assessed somewhat differently than unfitness or unlikelihood of change. As directed by K.S.A. 2018 Supp. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests determination. A district court decides best

9

interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

We find no abuse of discretion in the district court's best interests determination in favor of terminating P.T.'s parental rights. Nothing in that decision suggests the district court either misunderstood the relevant facts or misapplied the governing legal standards. We are then left to ask simply whether no reasonable judge would have come to the same conclusion in similar circumstances. We are confident that other judges would have reached the same conclusion on what was best for the children.

What we have already discussed readily supports the best interests outcome. P.T. had no realistic prospects for becoming a fit parent in any reasonable time, especially given the ages of the children. The duration of the foster placements measured against the children's young ages also pointed toward termination as furthering their extended interests in achieving stable, supportive, and nurturing home environments. The district court did not abuse judicial discretion in so concluding.

Affirmed.